UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>(1) JAMES GARRETT , (2) LEVI GARRETT ,<br><br>Defendant. | 3:21-CR-30091-RAL<br><br><br>OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION |

After a six-day trial, a jury found Defendant James Garrett guilty on two counts (Counts IV and VI) of False Statement in Connection with Federal Crop Insurance and acquitted him on other charges. Doc. 95. The jury found Defendant Levi Garrett guilty on one count (Count V) of False Statement in Connection with Federal Crop Insurance and acquitted him on another charge. Id. Defendants then filed a Motion for Judgment of Acquittal or in the Alternative for New Trial, Doc. 109, which this Court denied, Doc. 127. On April 19, 2023, Defendants filed a Motion for Reconsideration of Defendant's Motion for New Trial (Doc. 109) Pursuant to Rule 33(b)(1) and Rule 37, Doc. 165, claiming that a government witness has recanted testimony used to prove Counts IV and V, and this newly discovered evidence entitled Defendants to a new trial, Doc. 166 at 3. For evidence that a witness recanted his testimony resulting in newly discovered evidence, Defendants filed an affidavit from witness Cody Hostler that states "My testimony remains consistent," Doc. 117-1 ¶ 3, and "My testimony on October 25, 2022, remains true and correct," id. ¶ 13. For the reasons discussed below, this Court denies the motion for reconsideration.

1

## I. Facts Relevant to the Motion

Defendant James Garrett (James) is the father of Defendant Levi Garrett (Levi). The Garretts operated a farm and ranch in Sully County, South Dakota. Because Defendants' most recent motion focuses on the counts of conviction related to planting sunflowers in 2018 (IV and V), this Court will focus on the facts relating to that crop year.

The Garretts participated in the federal crop insurance program during 2018. That year, James certified on his acreage report that he planted 1,152.22 insured acres of sunflowers between June 10 and June 16, 2018. Tr. Ex. 4. Levi certified on his acreage report that he planted 1,122.79 acres of sunflowers between June 10 and June 16, 2018. Tr. Ex. 5. Both James and Levi signed their separate acreage reports just below the following certification statement:

> I certify that to the best of my knowledge and belief all of the information on this form is correct. I also understand that failure to report completely and accurately may result in sanctions under my policy, including but not limited to voidance of the policy, and in criminal or civil penalties (18 U.S.C. § 1006 and § 1014; 7 U.S.C. § 1056; 31 U.S.C. § 3729, and § 3730 and any other applicable federal statutes.).

Tr. Exs. 4–5. These acreage reports are for a federal crop insurance program administered by Crop Risk Services for the Risk Management Agency, which is a federal agency within the United States Department of Agriculture.

The Department of Agriculture establishes a date by which a crop must be planted for full crop insurance coverage. A farmer may still obtain coverage for crops planted after the established plant date, but there are discounts in the reimbursement if late-planted crops fail and a final cutoff date for planting beyond which no crop insurance is available. The established 2018 plant date for full insurance coverage for a sunflower crop in Sully County, South Dakota, was June 20, 2018. See Tr. Ex. 108. The dates of planting sunflowers certified by the Garretts in 2018 were before the established plant date for sunflowers in Sully County.

The Garretts had purchased seed in a previous year from Pinnacle Agriculture on credit but failed to pay for the seed or spraying services supplied by Pinnacle Agriculture and instead filed a bankruptcy case. Pinnacle Agriculture refused to sell seed to the Garretts on credit in 2018. The only evidence that the Garretts acquired sunflower seed to plant in 2018 was from Sioux Nation, LLC. Sioux Nation, LLC employees kept a contemporaneously made handwritten log on a legal pad of when farmers bought seed. Doc. 167-2 at 4–6. On a page that begins with the date "6-20-18," Sioux Nation, LLC on the third entry on the page recorded that James bought eight pallets of sunflower seed, and across from that entry "Del made 6-22-18" is written. Tr. Ex. 52 at 1; Doc. 167-2 at 7, 24. Cody Hostler, a co-owner of Sioux Nation, LLC, testified at trial about that log, delivery, and invoicing for seed sales to Defendants in 2018, 2019, and 2020. Three lines below that entry the date "6-22-18" is written across from another entry. Id.

Sioux Nation, LLC created a delivery ticket on June 22, 2018, which corresponds to the "Del made 6-22-18" on the delivery log showing the date the delivery was entered into the Sioux Nation, LLC computer system. Doc. 167-1 at 7; Doc. 167-2 at 5–6, 24. Hostler testified on direct examination that based on the delivery log, the seeds had to be picked up or delivered "between 6-20 and 6-22" or within a couple of days thereof. Doc. 167-2 at 6. However, on cross examination as he does in his new affidavit, Hostler explained that "'Del made,' has nothing to do with when the product was delivered," and only reflects when Sioux Nation "g[o]t around to entering it into the system." Doc. 167-1 ¶ 11; Doc. 167-2 at 12. Hostler also explained that Defendants, and other farmers in the area, often picked up seed and paid at a later date and that an invoice or delivery ticket would not necessarily be created at the time seed was picked up. Doc. 167-1 ¶ 5; Doc. 167-2 at 11, 28.

Six Sully County farmers whose properties border that of the Garretts—Brienne Sandal, Tim Stampe, Tom Young, Sam Braun, Jeff Bush, and Jerry Bush—testified that between 2016 and 2020 the Garretts habitually planted late or not at all. See Tr. Ex. 96. Each testified about how they were out in their fields adjacent to the Garrett land between May and July of each year and could observe the lack of activity—no timely tillage, no weed control, no timely planting—on the Garrett land. Many of these neighboring farmers testified to chronic weed issues from the idle or late planted Garrett land.

One of the fields certified by the Garretts as having been planted to sunflowers between June 10 and 16, 2018, was the subject of a spray drift complaint in July 2018. A neighbor of the Garretts reported spray drift from Garrett land onto a neighboring corn crop, prompting a state investigator to visit the site, take photographs, and obtain the record of spraying of the Garretts' field. The spray records produced by Levi documented that he had sprayed a field with the herbicide paraquat dichloride on July 6, 2018; that same field had been certified as having been planted in June 2018 to sunflowers. See Tr. Exs. 64, 68. An agronomist testified at trial that spraying paraquat dichloride would kill any sunflower seedlings or plants. A photograph showing the Garrett field taken by the investigator of the spray drift claim in early August 2018 reflected dying weeds and not a field of sunflowers ostensibly planted in June 2018. Tr. Exs. 65–67. There was some evidence that the Garretts planted sunflowers later in 2018 on their lands, likely following the spraying by Levi in July 2018 using a no-till method, by which the spray kills weeds to give a late-planted sunflower crop a chance to emerge. The Garretts received full crop insurance benefits for the 2018 sunflowers as if their sunflower fields were timely planted as the Garretts had represented.

On March 30, 2023—five months after his testimony at the Defendants' trial—Cody Hostler, the owner of Sioux Nation, LLC, "sought out" the Defendants "to clarify/detail the Testimony [he] provide[d] . . . so that those outside of the agriculture business sector understand [his] Testimony" in an affidavit. Doc. 167-1 ¶ 3. Within that affidavit, Hostler states that Defendants bought 185 units of sunflower seeds, which James Garrett took possession of at some unknown point. Id. ¶ 6. The invoice for the sunflower seed indicates that the "defendants removed the sunflower seeds from the pallets and returned said pallets to Sioux Nation in good condition prior to payment of the seed." Id. ¶ 9. Hostler states that the circle around "Delmade with 6-22-18" means that Defendants' "payment was delivered via computer to Pioneer Seeds for the defendants' order and that the pallets were returned and in Sioux Nation's possession." Id. ¶ 11. According to Hostler there is no way to tell the exact date of when Defendants took possession of the sunflower seeds. Id. ¶ 12. This affidavit is largely consistent with Hostler's trial testimony on cross-examination by Defendants' counsel and indeed twice in the affidavit Hostler makes clear that "his testimony remains consistent" and his prior trial testimony "remains true and correct." Id. ¶¶ 3, 13. After deceptively stating that Hostler "recant[ed] his trial testimony," Doc. 166 at 3, Defendants argue that because Hostler clarified his testimony that the delivery log did not give information regarding potential dates Defendants could have received the seeds, this constitutes new evidence entitling them to a new trial.

## II. Discussion

Defendants currently have a pending appeal, Docs. 148–49, which places jurisdiction with the United States Court of Appeals for the Eighth Circuit and limits what actions this Court can take. District courts are prohibited from granting a motion for a new trial while an appeal is pending, but they can deny such a motion or certify an intention to grant the motion to the court

5

of appeals, which can then entertain a motion to remand the case. United States v. Reeves, 83 F.3d 203, 208 (8th Cir. 1996). As such, this Court does have the power to consider the issue presented in the motion.

Under Rule 33 of the Federal Rules of Criminal Procedure, this Court "may vacate any judgment and grant a new trial if the interest of justice so requires." This Court has "wide discretion" in deciding whether to grant a new trial. United States v. Malloy, 614 F.3d 852, 862 (8th Cir. 2011) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). A new trial should be granted only in an exceptional case where "the evidence preponderates heavily against the verdict." United States v. Starr, 533 F.3d 985, 999 (8th Cir. 2008) (quotation omitted). Such authority, however, "should be exercised sparingly and with caution." United States v. Cole, 537 F.3d 923, 926 (8th Cir. 2008) (quoting United States v. Sturdivant, 513 F.3d 795, 802 (8th Cir. 2008)).

The standard for a new trial based on newly discovered evidence is "'rigorous' because these motions are 'disfavored.'" United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007) (quoting United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001)). As stated in Baker, to justify a new trial based on the discovery of new evidence, the Garretts must show:

> (1) the evidence must have been unknown or unavailable to the defendant[s] at the time of trial; (2) the defendant[s] must have been duly diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial.

Id. (quoting United States v. Haskell, 468 F.3d 1064, 1076 (8th Cir. 2006)); see also United States v. Hollow Horn, 523 F.3d 882, 889–90 (8th Cir. 2008). For newly discovered evidence to be material it must be "more than merely cumulative or impeaching." Dogskin, 265 F.3d at 685. The new evidence must also be admissible, because if the evidence is inadmissible, "there is no

'reasonable likelihood that the new evidence could have affected the judgment of the jury.'" Id. at 686 (quoting Ray v. United States, 588 F.2d 601, 603 (8th Cir. 1978)).

The Eighth Circuit "view[s] with suspicion motions for new trial based on the recantation of a material witness because '[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.'" United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005) (second alteration in original) (quoting United States v. Grey Bear, 116 F.3d 349, 350 (8th Cir. 1997)). "When the claim of newly discovered evidence is based on a recantation, the district court must first determine whether the recantation is credible." Id. Here, "the real question . . . is not whether the district judge believed the recantation, but how likely the district judge thought a jury at a second trial would be to believe it." Id. (quoting Grey Bear, 116 F.3d at 350).

Defendants argue that Hostler's affidavit recants his testimony and "clarifies that the delivery log, exhibit 52, only indicates payment in full was made and the eight pallets were returned empty in good condition." Doc. 169 at 2. However, Hostler plainly is not recanting his testimony, instead his affidavit reaffirms that his testimony "remains consistent" and his trial testimony "remains true and correct." Doc. 167-2 ¶¶ 3, 13. Hostler's affidavit otherwise presents little new evidence but restates facts that were drawn out from Hostler in his cross examination. While Hostler testified that he believed the sunflower seed left the warehouse between June 20 and June 22, 2018, or within a couple of days thereof, he also said he did not know that for sure and that farmers had taken seed on prior occasions without it being digitally documented by Sioux Nation, LLC. This information not only was available to Defendants through due diligence, but also was brought out through cross examination of Hostler. Hostler told the jury that "'Del made,' has nothing to do with when the product was delivered," and only reflects when Sioux Nation

7

"g[o]t around to entering it into the system." Doc. 167-2 at 12. Hostler also explained that Defendants often picked up seed and paid at a later date and that an invoice or delivery ticket would not necessarily be made at the time the seed was picked up. Doc. 167-2 at 11, 28. Both of these statements confirm what Hostler put in his affidavit, that the log indicates when the information was input into the computer and that Sioux Nation, LLC cannot tell with certainty when the Garretts obtained their seed. Because this claimed new evidence was presented to the jury and the Garretts were still convicted, the Garretts also cannot show that this "new evidence" probably would result in acquittal in a retrial. In short, Defendants have failed to establish any of the four requirements for a new trial based on new evidence or recantation of witness testimony.

Moreover, the testimony of Hostler regarding the delivery log was not the only evidence regarding the 2018 sunflower crop failure claims. Hostler's testimony suggested that the Garretts did not obtain sunflower seed until after the planting deadline. But the testimony of the neighbors of the Garretts about the Garretts routinely leaving fields fallow and full of weeds well into the summer also provides evidence to support a conviction. Indeed, six farmers whose properties abut Garrett land testified that between 2016 and 2020, the Garretts habitually planted late and between the months of May and early July they did not see the Garretts timely plant crops on their lands.

Beyond that, there was testimony from a neighbor who reported a spray drift issue in July 2018 from land that the Garretts represented to be planted to sunflowers in June 2018 and from a state investigator who inspected the area and took photographs in early August 2018. Levi produced spray records showing that he sprayed the herbicide paraquat dichloride on July 6, 2018, Tr. Ex. 64, which is toxic to sunflowers. Photographs showing part of the Garrett field ostensibly planted to sunflowers document the absence of any sunflower crop at that time. Tr. Exs. 65–67. The August 2018 photographs instead show dying weeds, not dying sunflowers on the Garrett

field. When the Garretts eventually may have planted some sunflowers, the July 6, 2018 spraying of paraquat dichloride, a jury reasonably could conclude, was to kill weeds to then plant a late no-till crop of sunflowers later in 2018. The jury did not have to accept Levi's explanation that he copied the date on which he sprayed incorrectly. While Defendants argue that the testimony of Kenny Buchholz proves that there were sunflowers in the field, his testimony was contradicted by the pictures of dying weeds and no sunflowers taken in August 2018 and the testimony of many neighbors about late planting practices by the Garretts. Further, the jury did not have to accept Buchholz's testimony especially since he conceded that he was unable to remember some details of an adjustment that took place four years earlier.

Defendants have not justified the grant of a new trial based on the Hostler affidavit and arguments therefrom. Therefore, it is

ORDERED that Defendants' Motion for Reconsideration of Defendant's Motion for New trial (Doc. 109) Pursuant to Rule 33(b)(1) and Rule 37(b), Doc. 165, is denied.

DATED this 5th day of June, 2023.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE